PHILIP J. BAKER, RESPONDENT, *v.* JOHN R. THOMAS AND ANOTHER, APPELLANTS, IMPLEADED WITH OTHERS, DEFENDANTS.

*Recording act — a release of a part of mortgaged premises is a "conveyance" — a purchaser "in good faith" — what acts of possession and occupation constitute notice.*

A release of a part of mortgaged premises is a "conveyance" within the meaning of the recording act (R. S., part 2, chap. 3, § 38) defining the term "conveyance."

A person purchased a piece of pasture land which was thereupon released from the lien of a mortgage then existing thereon. There were no buildings on the land at the time, and he erected none after his purchase, but simply fenced the land and made no other changes thereon.

In an action between such purchaser and an assignee of said mortgage, whose assignment was executed five years subsequent to, but was recorded before, the deed and release to said purchaser, it appeared that said assignee lived at a distance of fifteen miles from the premises and it was not shown that he had any knowledge of their situation or occupation.

*Held,* that the acts of the purchaser were not sufficient to constitute notice to the assignee.

That the assignee was a purchaser "in good faith," within the meaning of the recording act (R. S., part 2, chap. 3, § 1) prescribing the effect of a failure to record a conveyance.

APPEAL by the defendants, John R. Thomas and Clinton R. Thomas, from a judgment entered in the office of the clerk of the county of Oneida on the 25th day of July, 1890, adjudging, among other things, that the plaintiff was entitled to a judgment of foreclosure and sale of eight acres of the premises described in the complaint as against said defendants, after a trial at the Oneida Special Term.

*Risley & Perry,* for the appellants.

*P. C. J. De Angelis,* for the respondent.

MARTIN, J. :

On the 1st day of January, 1875, James Mitchell was the owner of about two hundred and sixty-eight acres of land, being the premises described in the complaint. On that day he executed a mortgage thereon, in which his wife joined, to Samuel Douglas to secure the payment of $4,000 January 1, 1878, with annual interest.

The mortgagee having died, the executor of his estate, on June 8, 1876, assigned the mortgage to Emily Douglas, which assignment was recorded on that day.

January 1, 1878, Mitchell and wife, by warranty deed, conveyed to the appellants eight acres of the premises mortgaged. On the same day Emily Douglas, who was then the owner of the bond and mortgage, executed and delivered a release of the eight acres thus conveyed from the lien of her mortgage. January 3, 1883, Emily Douglas assigned to the plaintiff a portion of the bond and mortgage, and on February thirteenth of the same year assigned to him the remainder thereof. The assignments of the bond and mortgage to the plaintiff were recorded on the days on which they were made, while the deed given by the mortgagor to the appellants, and the release of the portion of the premises so conveyed, given by the then owner of the bond and mortgage, were not recorded until February 25, 1886.

The eight acres conveyed to the appellants consisted of a strip of land about nine rods in width, extending across the farm from north to south. It was pasture land, upon which there were no buildings, and none were erected thereon by the appellants, but immediately after they purchased they fenced the land, presumably by removing the fence about nine rods from its former location, and used it as a pasture. The plaintiff resided fifteen miles distant, and was not shown to have had any knowledge of the situation of the premises or how they were occupied.

The trial court held that the plaintiff purchased the bond and mortgage in good faith and for a valuable consideration; that he thereby became a subsequent purchaser within the meaning of the recording act, and was entitled to a judgment of foreclosure and sale, and to sell the eight acres purchased by the appellants, if necessary, to pay the mortgage debt and costs. The correctness of this decision is challenged by the appellants upon the grounds: (1) That the plaintiff took title to the mortgage in suit, subject to all the equities existing against it, and acquired no greater rights than were possessed by his assignor. (2) That the release of a part of the mortgaged premises given to the appellants was not a " conveyance " within the recording act; and (3) That the plaintiff was not a purchaser in good faith, as the appellants were in open and visible

possession of the eight acres in question, which was constructive notice to them of the appellants' title.

The question involved in this case is not, as the appellants' counsel seems to suppose, what rights the plaintiff acquired by virtue of his assignment, as it is clear that, independent of the recording act, he acquired no greater rights than his assignor possessed. But the question here is what rights did he acquire, if any, by virtue of the recording act, as a subsequent purchaser whose assignment was recorded prior to the recording of the appellants' release. In other words, the plaintiff's superior rights, if he has any, were acquired not under his contract alone, but by virtue of the rights given by the recording act to a subsequent purchaser whose conveyance is first recorded. Indeed, there is no pretense that, independent of the recording act, the plaintiff acquired any right to sell the eight acres in question. Hence the only question in the case relates to the application of that act.

Therefore, the next question presented is whether a release of a part of mortgaged premises is a conveyance within the provisions of the recording act.

The term " conveyance " is declared by that statute " to embrace every instrument in writing, by which any estate or interest in real estate is created, aliened, mortgaged or assigned ; or by which the title to any real estate may be affected in law or equity." *    *    * (Revised Statutes [8th ed.], 2475, § 38.)

In *Bacon* v. *Van Schoonhoven* (87 N. Y., 446), it was held that a satisfaction-piece of a mortgage was a " conveyance " within the meaning of the recording act. In delivering the opinion in that case RAPALLO, J., said : " It (a satisfaction-piece), is equivalent to a release of the mortgaged premises. Instruments creating liens by way of mortgage, being expressly declared to be embraced, for the purposes of this act, in the term ' conveyance ' it is difficult to conceive any reason why instruments discharging such liens should not be included in the general definition of ' instruments by which any estate or interest in land may be affected in law or equity.' " In *Brewster* v *Carnes* (103 N. Y., 562), it was said : " It is a well-established principle of law that the assignment of a mortgage and the satisfaction of the same are conveyances within the meaning of the recording act. (*Van Keuren* v. *Corkins*, 66 N. Y., 77 ; *West-*

*brook* v. *Gleason*, 79 id., 23, 25; *Decker* v. *Boice*, 83 id., 215; *Bacon* v. *Van Schoonhoven*, 87 id., 446.)"

In *Mutual Life Insurance Company* v. *Wilcox* (55 How. Pr., 43) it was held that a release of a part of mortgaged premises was a "conveyance" within the recording act. (See, also, *St. John* v. *Spalding*, 1 T & C., 483, and opinion of VANN, J., in *Frear* v. *Sweet*, 118 N. Y., 463.) The doctrine of the cases cited leads us to the conclusion that the court properly held that the release to the appellants of a part of the mortgaged premises was a "conveyance" within the meaning of the recording act, and that the appellants' release was void as to the plaintiff's assignment, which was first recorded, if he was a purchaser in good faith and for a valuable consideration.

This leaves for consideration the question whether the plaintiff was a subsequent purchaser in good faith and for a valuable consideration. It is well settled that as an assignee of the mortgage the plaintiff became a purchaser under the recording act, and there is no claim that such subsequent purchase was not for a valuable consideration and in good faith, unless the plaintiff had constructive notice of the appellants' title by reason of their possession of the premises. As we have already seen, the only occupancy of the premises was, that the fence was changed and the premises were used by the appellants as pasture land, there being no building or other improvements thereon. Whether this was sufficient notice to impeach the plaintiff's good faith, and thus relieve the appellants from the operation of the recording act, is the only question we need consider.

In *Brown* v. *Volkening* (64 N. Y., 76, 82) ALLEN, J., in delivering the opinion of the court, said : " The statute makes void a conveyance not recorded only as against a subsequent purchaser in good faith and for a valuable consideration. (1 R. S., 756, § 1.) Actual notice of a prior unrecorded conveyance, or of any title, legal or equitable, to the premises, or knowledge and notice of any facts which should put a prudent man upon inquiry, impeaches the good faith of the subsequent purchaser. There should be proof of actual notice of prior title, or prior equities, or circumstances tending to prove such prior rights, which affect the conscience of the subsequent purchaser. Actual notice of itself impeaches the subsequent conveyance.

Proof of circumstances, short of actual notice, which should put a prudent man upon inquiry, authorizes the court or jury to infer and find actual notice. The character of the possession which is sufficient to put a person upon inquiry, and which will be equivalent to actual notice of rights or equities in persons other than those who have a title upon record, is very well established by an unbroken current of authority. The possession and occupation must be actual, open and visible; it must not be equivocal, occasional, or for a special or temporary purpose; neither must it be consistent with the title of the apparent owner by the record." After examining several cases, he continues: "I have met with no case in which anything short of actual, visible and, as is said in some cases, notorious possession of premises, has been held constructive notice of title in a claimant. (See *Chesterman* v. *Gardner*, 5 Johns. Ch., 29; *Grimstone* v. *Carter*, 3 Paige, 421; *Cook* v. *Travis*, 20 N. Y., 400; *Webster* v. *Van Steenbergh*, 46 Barb., 212.) All the cases agree that notice will not be imputed to a purchaser except where it is a reasonable and just inference from the visible facts. Neither will the principles of constructive notice apply to unimproved lands, nor to cases where the possession is ambiguous or liable to be misunderstood. (*Patten* v. *Moore*, 32 N. H., 382.) It should not apply within the same principle to an uninhabited and unfinished dwelling-house; there must be a possession, actual and distinct, and manifested by such acts of ownership as would naturally be observed and known by others, The using of lands for pasturage or for cutting of timber is not such an occupancy as will charge a purchaser or incumbrancer with notice. (*Coleman* v. *Barklew*, 3 Dutch., 357; *McMechan* v. *Griffing*, 3 Pick., 149; *Holmes* v. *Stout*, 10 N. J. Eq., 419; see, also, *Fassett* v. *Smith*, 23 N. Y., 252.)" See, also, *Page* v. *Waring* 76 N. Y., 463) and *Pope* v. *Allen* (90 N. Y., 298).

In *Merritt* v. *Northern Railroad Company* (12 Barb., 605), it was held that the location and the staking out of a line of a railroad and setting posts for the fence, was not such possession as amounted to notice to purchasers of a grant of a right of way to the company. In *Trustees of Union College* v. *Wheeler* (59 Barb., 585, 617), it was said by MULLIN, P. J., who delivered the opinion in that case, that "the occupancy that is sufficient to charge a subsequent

purchaser or incumbrancer with notice of the occupant's rights, must be open and visible, and he must actually improve the premises. Fencing, pasturing or cutting timber is not such an occupancy as will charge a purchaser or incumbrancer with notice. (*McMechan* v. *Griffing*, 3 Pick., 149, and cases cited; *Cook* v. *Travis*, 22 Barb., 338; *Troup* v. *Hurlbut*, 10 Barb., 354; 4 Kent's Com., 179, and notes.)"

"The protection furnished by these laws (the recording act) should not be taken away except on clear proof of a want of good faith in the party claiming their protection, and a clear right in him who seeks to establish notice by means of possession. The circumstances must be such that a prudent man would be put upon inquiry, and would be chargeable with bad faith if he did not inquire." (1 Jones on Mortgages, § 601.)

We are of the opinion that the possession of the premises by the appellants was not of such a character as to constitute a notice to the plaintiff of the rights of the appellants in the premises, and that the court properly held that the plaintiff was a subsequent purchaser in good faith and for a valuable consideration.

The case of *Phelan* v. *Brady* (119 N. Y., 587), is not in conflict with the authorities cited, but is clearly distinguishable from them, as in that case the possession was actual, open, visible, notorious, unequivocal, and such as manifested acts of ownership that would naturally be observed and known to others. Nor does the case of *Frear* v. *Sweet* (118 N. Y., 454), in any way aid the appellants, as it was held in that case that the premises sought to be charged were never included in the mortgage or subjected to the lien thereof, and, therefore, the recording act did not create a lien, and was in no way involved.

It follows that the judgment should be affirmed.

HARDIN, P. J., and MERWIN, J., concurred.

Judgment affirmed, with costs.